UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

STASON SUTTON AND FAIR HOUSING JUSTICE CENTER, INC.,

                                    Plaintiffs,

                    v.

CREF 546 WEST 44TH STREET, LLC, PATRINELY GROUP, LLC, AND CETRA/CRI ARCHITECTURE, PLLC,

                                    Defendants.

1:18-cv-02146 JLR (HJR)

**PARTIAL CONSENT DECREE AS TO PLAINTIFFS' CLAIMS**

---

This Partial Consent Decree (or "***Decree***") is entered into by and among Plaintiffs Stason Sutton ("***Sutton***") and Fair Housing Justice Center, Inc. ("***FHJC,***" and together with Sutton, the "***Plaintiffs,***" and each individually a "***Plaintiff***"); Defendants CREF 546 West 44th Street, LLC ("***CREF 546W44***"), and Patrinely Group, LLC ("***PG***"); and CETRA/CRI Architecture, PLLC ("***CETRA***"). All named defending parties are referred to collectively as "Defendants." The Plaintiffs and Defendants are collectively referred to as the "***Parties,***" and each of the Parties is referred to individually as a "***Party***".

## INTRODUCTION

**WHEREAS,** on March 9, 2018, Plaintiffs filed a Complaint in the United States District Court, Southern District of New York, entitled *Stason Sutton and Fair Housing Justice Center, Inc. v. CREF 546 West 44th Street, LLC, Patrinely Group, LLC and CETRA/CRI Architecture, PLLC,* 18-cv-02146-JLR, as amended on May 25, 2018 (the "***Action***") alleging that Defendants discriminated on the basis of disability, *inter alia,* in the design and construction of a 280 unit multi-family residential building located at 535 West 43rd Street (a/k/a 546 West 44th

1

Street) in New York County, New York (the "***Subject Property***") in violation of the Federal Fair Housing Amendments Act of 1988 ("***FHAA***"), Title VIII of the Civil Rights Act, 42 U.S.C. § 3601 *et seq.;* the New York State Executive Law (the "***Executive Law***") § 296 *et seq.*; the New York State Civil Rights Law, §40 ("***CRL***"); and the Administrative Code of the City of New York (the "***Administrative Code***") §8-107 *et seq.;* and

**WHEREAS,** Defendants deny the allegations of wrongdoing and liability against them in the Action, and, by agreeing to the terms set forth herein, do not intend to admit, and do not admit, the same; and

**WHEREAS,** the Parties agree voluntarily to resolve the claims asserted in the Action in accordance with the terms set forth herein; and

**WHEREAS,** the Parties agree to the entry of this Partial Consent Decree;

**It is hereby ORDERED, ADJUDGED, and DECREED** as follows:

## SECTION I
## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of the Action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 3613 as the Action involves federal questions regarding the deprivation of Plaintiffs' rights under the FHAA and has exercised its supplemental jurisdiction over Plaintiffs' related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

2. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants' alleged acts of discrimination occurred in this judicial district and the Subject Property is located in this judicial district.

3.  Upon entry of this Partial Consent Decree, all of Plaintiff FHJC's and Plaintiff Sutton's claims and causes of action as alleged against Defendants in the Complaint are hereby dismissed with prejudice.  Upon entry of this Partial Consent Decree, this Court exercises and retains jurisdiction over the subject matter of the Action and over the Parties (i) for the purpose of resolving disputes arising under this Partial Consent Decree; (ii) to effectuate or enforce and compliance with this Partial Consent Decree; and (iii) as to Defendants only, to retain its supplemental jurisdiction over the cross-claims asserted by and against CREF 546W44, PG, and CETRA and each other.  For the avoidance of doubt, this Partial Consent Order is intended to and hereby does resolve all claims as between Plaintiffs and Defendants; however, it does not resolve the cross-claims between Defendants, which are expressly preserved.  Defendants consent and agree to the Court's exercise and retention of jurisdiction and may not challenge the terms of this Partial Consent Decree or this Court's jurisdiction to enter and enforce this Partial Consent Decree.

4.  The Parties to this Partial Consent Decree will endeavor in good faith to informally resolve any differences between them regarding compliance with the terms of this Partial Consent Decree.  If a Plaintiff (hereafter, the "***Noticing Plaintiff***") to this Partial Consent Decree believes that any of the Defendants have failed to comply with any of their obligations under this Partial Consent Decree to the Noticing Plaintiff (the "***Noticed Defendant/s***"), the Noticing Plaintiff will provide written notice of any alleged noncompliance to the Noticed Defendant/s and provide them with a thirty (30) day opportunity to cure the alleged noncompliance (the "***Cure Period***") prior to the Noticing Plaintiff filing an appropriate motion seeking enforcement of the terms of this Partial Consent Decree.  Notwithstanding the filing of a motion to enforce the terms of this Partial Consent Decree because the Noticed Defendant/s did

3

not cure the alleged noncompliance within the Cure Period, the Noticing Plaintiff and Noticed Defendant/s (the "***Conferring Parties***") agree to confer within fifteen (15) days following the expiration of the Cure Period (the "***Resolution Period***") to discuss a reasonable resolution of the noncompliance alleged by the Noticing Plaintiff and a reasonable timetable to implement any agreed to resolution.  Should this Court find that any of the Noticed Defendant/s has failed to perform any obligation arising under this Partial Consent Decree following this process, the Noticed Defendant/s that failed to perform shall pay all the attorney's fees, expenses and costs incurred by the Noticing Plaintiff to enforce the terms and conditions of this Partial Consent Decree.

## SECTION II
## PARTIES BOUND AND SCOPE

5.   This Decree is binding upon Defendants and all their employees, agents, representatives, officers, heirs, assigns, subsidiaries, or successors in interest, unless otherwise specified.  Except as set forth in Section XII, the sale or transfer of ownership, in whole or in part, of any Defendant's or any other entity's or person's interest(s) in the Subject Property does not alter any of Defendants' obligations under this Partial Consent Decree.

6.   Unless otherwise specified, the terms of this Partial Consent Decree will apply to:

   a.   the policies for the design, construction, development of, and the operation by CREF 546W44 of Covered Property (defined below) in FHJC's Service Area (defined below);

   b.    the policies for the design, construction, development of, and the operation by PG of a Covered Property (defined below) in FHJC's Service Area (defined below); and

c. to the policies for the design by CETRA of a Covered Property (defined below) in FHJC's Service Area (defined below).

## SECTION III
## ADDITIONAL DEFINITIONS

7. As used in this Partial Consent Decree, the following terms will have the following meanings:

a. "***Accessibility Standards***" means the statutory accessibility requirements specified in the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(C), the associated regulatory accessibility requirements, 24 C.F.R. § 100.205, and the accessibility provisions of the New York City Building Code, Title 28 of the Administrative Code of the City of New York, applicable to the Subject Property or a Covered Building.

b. "Apartment" means the unit at the Subject Property leased to Sutton pursuant to the Sutton Lease.

c. "***CETRA Covered Building***" is a Covered Building designed or constructed by CETRA within FHJC's Service Area (defined below).

d. "***CREF Covered Building***" is a Covered Building designed or constructed by CREF 546W44 within FHJC's Service Area (defined below).

e. "***Covered Building***" means each building that contains four or more dwelling units within the FHJC service area which is designed or constructed by CREF 546W44, PG, or CETRA during the term of this Partial Consent Decree, where the initial building permit for the Covered Building was filed on or after the Effective Date of this Partial Consent Decree.

f. "***Covered Property***" means the entirety of a site containing at least one Covered Building as defined above, without implying that the entirety of the site or all

5

buildings on site are Covered Buildings.

g.  "*Covered Employees and Agents*" means each officer, director, employee, and agent of CREF 535W44, PG, and CETRA, and their respective subsidiaries and affiliates whose duties, in whole or in part, involve or may involve supervision over the development, design and/or construction of Covered Multifamily Dwellings.

h.  "*Covered Multifamily Dwellings*" means (a) all the units in any Covered Buildings that have at least one elevator, and (b) ground floor units in Covered Buildings that do not have an elevator.

i.  "*Effective Date*" means the date pursuant to Section IV, Paragraph 8 on which all obligations under this Partial Consent Decree (unless otherwise specified) commence.

j.  "*FHJC's Service Area*" means New York City, New York and the counties of Nassau, Suffolk, Westchester, Dutchess, Orange, Putnam, and Rockland, in New York State.

k.  "*PG Covered Building*" is a Covered Building designed or constructed by PG within the FHJC Service Area (defined above).

l.  "*Retrofit Period"* is the period of time of three (3) years following the Effective Date.

m.  *"Retrofit Plans"* means the schedule of retrofits performed or to be performed at the Subject Property pursuant to this Partial Consent Decree, as set forth in **Exhibits A** and **B** hereto.

> i.  "*Category A*" retrofits, as listed in **Exhibit B,** are those retrofits that will be completed at the Subject Property pursuant to the individual unit retrofit process described below within thirty (30) months of the Effective Date the ("*Category A Deadline"*).  Category A retrofits shall be

completed even absent "***Unit Turnover***" or request from a current or prospective resident.

   ii. "***Category B***" retrofits, as listed in **Exhibit B,** are those retrofits that, for the first three years following the Effective Date (the "***Retrofit Period***"), will be completed on Unit Turnover or request of a current resident pursuant to the individual unit retrofit process described below.  Following the expiration of the Retrofit Period, any Category B retrofits not performed shall automatically convert to Category C retrofits.

   iii. "***Category C***" retrofits, as listed in **Exhibit B**, are those retrofits that will be performed only upon specific request of a current or prospective resident.

n. "***Sutton Lease***" means the agreement of lease dated October 27, 2016 between Sutton, as tenant, and CREF 546W44, as landlord for the Apartment, inclusive of all riders, amendments and renewals.

o. "***Unit Turnover***" ***or "turn"*** means the time period between a move out of a leaseholder resident and subsequent occupancy of that unit by a new leaseholder who was not a previous occupant of that unit.

**SECTION IV**
**TERM**

8.   All the obligations of the Parties under this Partial Consent Decree, unless otherwise specified, will commence on the seventh (7) day following the date this Partial Consent Decree is "So-Ordered" by the District Court (the "***Effective Date***").  All obligations under this Partial Consent Decree, with the exception of the Subject Property specific obligations designated

below or unless otherwise specified, shall remain in effect for a period of five (5) years following

the Effective Date.  The Subject Property specific obligations designated below shall remain in

effect for a period of three (3) years following the Effective Date (the "***Retrofit Period***"), except

as otherwise specified herein.


### SECTION V
### MONETARY RELIEF

9.   Defendants will pay the total sum of One Million One Hundred Thousand Dollars

($1,100,000) in full and final settlement of all of the Plaintiffs' claims against the Defendants in

the Action, including but not limited to damages, attorneys' fees, and costs ("***Settlement***

***Amount***").

10. The specific obligation of each Defendant is the subject of a separate confidential side

agreement among the Defendants ("***Defendants' Confidential Side Agreement***"), to which none

of the Plaintiffs is a party.  Each Defendant represents and warrants that Defendants'

Confidential Side Agreement is a duly executed, authorized and enforceable agreement.

Defendants represent and warrant that the sum total of each Defendant's specific obligation to

pay a portion of the Settlement Amount pursuant to Defendants' Confidential Side Agreement

equals or exceeds the Settlement Amount.   No Defendant shall have any obligation under this

Partial Consent Decree or otherwise for any portion of the Settlement Amount beyond that

assumed by it or by a third party on such Defendant's behalf pursuant to Defendants'

Confidential Side Agreement.  The Defendants' Confidential Side Agreement allocating

payment of the total Settlement Amount among the Defendants shall be disclosed to Plaintiffs

and their counsel, and Plaintiffs and their counsel only, solely as needed to enforce payment of

the agreed upon amounts pursuant to this Section V, and any such enforcement actions shall be

limited to each individual Defendant's share of the Settlement  Amount as described in

Defendants' Confidential Side Agreement..  Plaintiffs may disclose Defendants' Confidential

Side Agreement as part of any enforcement and collection action.

11. Defendants shall make the Settlement Amount payable to "Hanski Partners LLC as

attorneys for Fair Housing Justice Center, Inc. and Stason Sutton".  Within thirty (30) days after

this Partial Consent Decree is signed by Plaintiffs, Defendants shall deliver the Settlement

Amount to Plaintiffs' counsel, Hanski Partners LLC, at its offices located at 85 Delancey Street,

New York, New York 10002.  Delivery may be by wire transfer.  No Defendant shall have any

obligation to deliver any portion of the Settlement Amount unless and until Plaintiffs' counsel

has provided all Defendants with an executed IRS Form W-9 effective for the payee of the

Settlement Amount.


### SECTION VI
### PROVISIONS RELATING TO RETROFITS


12. The Settlement Amount does not include the cost of retrofits to individual dwelling units

and common use areas of the Subject Property, or the cost of performing any "on request"

retrofit to individual dwelling units at the Subject Property, required by this Partial Consent

Decree. Defendants shall bear the costs of all the retrofits (both required and as requested) to the

individual dwelling units and common use areas of the Subject Property required by this Partial

Consent Decree.  As between CREF 546W44, PG, and CETRA, the Settlement Amount is not

intended to compromise any claim concerning the cost of retrofits to individual dwelling units

and common use areas of the Subject Property, and nothing in this Partial Consent Decree shall

compromise, or is intended to compromise, any claim any Defendant has, or may have, against

one another concerning said costs.

9

13. CREF 546W44 shall enter into a contract with an independent neutral inspector with expertise in the design and construction requirements of the FHAA and local building codes, mutually agreeable to CREF 546W44 and FHJC (the "***Neutral Inspector***"), at CREF 546W44's sole cost and expense.  CREF546W44 has proposed and FHJC has accepted ACCESSpartnership, l.p. as the Neutral Inspector for the Subject Property.  The scope of the Neutral Inspector's engagement shall include the requirement that the Neutral Inspector independently determine Defendants' compliance with the retrofit requirements of this Partial Consent Decree at the Subject Property.  The terms of the contract between CREF 546W44 and the Neutral Inspector shall require the Neutral Inspector to conduct on-site inspections of all common area retrofits (**Exhibit A**) and all Category A, B, and C unit retrofits (**Exhibit B**) performed pursuant to the process and protocols described below.

14. If during the term of this Partial Consent Decree, the initially selected and approved Neutral Inspector is no longer available to serve in this capacity, CREF 546W44 will notify FHJC in writing and seek in good faith to obtain FHJC's agreement to a replacement Neutral Inspector, which agreement FHJC shall not unreasonably withhold.

### *Notice to Residents and Prospective Residents of Common Area Retrofits*

15. Within fifteen (15) days after the Effective Date CREF 546W44 shall provide written notice (substantially in the form attached hereto as **Exhibit "C"**) to all residents at the Subject Property informing them that the retrofits required by this Partial Consent Decree (**Exhibit "A"**) will be performed to the public and common use areas of the Subject Property.  CREF 546W44 shall provide FHJC with written certification that the notices required by this paragraph were distributed to residents and the specific manner in which the resident notices were distributed, within ten (10) days after distribution of the notices.

16. Within fifteen (15) days after the Effective Date and continuing until the retrofits required to the public and common use areas of the Subject Property have been completed, CREF 546W44 shall, at the time of application, deliver a notice to prospective residents of the Subject Property informing them that that the retrofits required by this Partial Consent Decree will be performed to the public and common use areas of the Subject Property.

### *Subject Property Common Use Area Retrofits*

17. CREF 546W44 shall remediate, or cause to be remediated, the common use areas at the Subject Property detailed in **Exhibit A** at CREF 546W44's expense and in a good and workmanlike manner.  CREF 546W44 shall complete the retrofits of all the common use areas detailed in **Exhibit A** within two hundred seventy (270) days after the Effective Date ("***Common Use Deadline***").

    a.  No later than three hundred (300) days after the Effective Date (30 days after the Common Use Deadline), CREF 546W44 shall provide FHJC with written confirmation that all the common area retrofits detailed in **Exhibit A** at the Subject Property have been completed and that the notice of retrofit of the common areas (**Exhibit C**) was distributed to prospective residents until the time of completion of common area retrofits.

    b.  No later than three hundred thirty (330) days after the Effective Date (60 days after the Common Use Deadline), CREF 546W44 shall have the Neutral Inspector complete its inspection of all of the common use areas at the Subject Property to assess whether the common areas were remediated in a good and workmanlike manner and in compliance with the Retrofit Plan for the common use areas.  CREF 546W44 will ensure that the Neutral Inspector has physical access to the retrofitted

11

features and elements to conduct the inspection. FHJC shall be permitted to have its own representative present at the Neutral Inspector's inspection of the common area retrofits at the Subject Property. CREF 546W44 will provide FHJC with notice of the date and time of inspection of the common area retrofits at the Subject Property when the inspection is confirmed with the Neutral Inspector, but in no case less than fourteen (14) days prior to the planned compliance inspection date.

c.  No later than three hundred sixty (360) days after the Effective Date (thirty (30) days after the inspection deadline), CREF 546W44 shall have the Neutral Inspector provide the Parties with a written report of the Neutral Inspector's findings regarding the completion of the common use retrofits detailed in **Exhibit A.** If the Neutral Inspector finds that any of the required common use area retrofits were not completed in a good and workmanlike manner and in compliance with the common use area Retrofit Plan, the Neutral Inspector's report shall so indicate with particularity.

d.  CREF 546W44 agrees to correct all such deviations from compliance with the common use area Retrofit Plan as noted in the Neutral Inspector's report within sixty (60) days from the date the Neutral Inspector provides its report to the Parties. The foregoing inspection process shall be repeated as many times as necessary until the Neutral Inspector is satisfied that all retrofits have been performed in a good and workmanlike manner and in compliance with the common use area Retrofit Plan, **Exhibit A**. In lieu of making a repeat on-site inspection, the Neutral Inspector, in the Neutral Inspector's reasonable discretion, may accept photographic and other evidence that shows the element with the corrected condition and both the location of

the measurement and the measurement which shows that a particular retrofit is compliant.

   e.  When, upon the Neutral Inspector's inspection and follow up review (as needed) of the common areas of the Subject Property, the Neutral Inspector determines that all common area conditions specified in **Exhibit A** have been completed in a good and workmanlike manner and in compliance with the Accessibility Standards or the Retrofit Plan, the Neutral Inspector shall issue a written Certificate of Compliance for the Subject Property and provide a copy to CREF 546W44 and FHJC. The Neutral Inspector's Certificate of Compliance shall be deemed final and binding on Plaintiffs as to the Subject Property and shall fully discharge CREF 546W44 from any further obligations to make retrofits to the common use areas of the Subject Property under this Partial Consent Decree.

   f.  The cost of retaining the Neutral Inspector and all required inspections shall be paid by CREF 546W44.

18. Nothing in this Partial Consent Decree shall be read to relieve CREF 546W44 of the obligation to complete the common use area retrofits detailed in **Exhibit A,** inclusive of required inspections, even if such obligations extend beyond the term of this Partial Consent Decree.

<u>***Notice to Residents of Individual Unit Retrofits***</u>

19. Within sixty (60) days after the Effective Date, CREF 546W44 shall provide written notice to all residents at the Subject Property (substantially in the form attached hereto as **Exhibit D**) (the "***Unit Retrofit Notice***") which informs them of the availability of accessibility retrofits to specific conditions in individual dwelling units. The notice will include the specific conditions from the Retrofit Plan (**Exhibit B**) that may be applicable to the resident's particular

13

unit or unit type.  The notice shall also state that CREF 546W44 will remediate the specific condition within 45 days if requested by the resident and available for that particular unit.  The notice shall also indicate that, absent any such request, all Category A retrofits will still be performed and completed within the Retrofit Period without request.

20. CREF 546W44 shall provide FHJC with written certification that the Unit Retrofit Notices to current residents described above were distributed and the specific manner of distribution within ten (10) days of distribution.

### *Notice to Prospective Residents of Retrofits to Individual Units Available on Request*

21. Within sixty (60) days of the Effective Date and continuing until all available "on request" retrofits have been made, CREF 546W44 shall deliver a notice to prospective residents of the Subject Property detailing those accessibility retrofits for individual dwelling units available at no cost to that resident only upon request (Category C).  The notice shall be substantially in the form of **Exhibit E** to this Partial Consent Decree and shall be delivered to the prospective resident when such person submits an application for new occupancy.  Any "on request" retrofit to an individual unit need not be completed by CREF 546W44 until the prospective resident making the request has signed a lease agreement.

22. On expiration of the Retrofit Period, the notice to prospective residents described in paragraph 21 above (**Exhibit E**) shall be amended to include any Category B retrofits not completed and converted by the terms of this decree to "on request" retrofits.

### *Subject Property Individual Unit Retrofits*

23. With respect to the individual units, CREF 546W44 will perform the required retrofits at the Subject Property through the following procedure:

14

a. All individual unit retrofits in Category A as detailed in **Exhibit B** shall be commenced by CREF 546W44 at its expense on or after the Effective Date, and CREF 546W44 shall complete all the individual unit retrofits in Category A within thirty (30) months of the Effective Date (the Category A Deadline). All Category A retrofits shall be completed within thirty (30) months of the Effective Date even absent "Unit Turnover" or a request from a current or prospective resident.

b. All individual unit retrofits in Category B as detailed in **Exhibit B** shall be commenced by CREF 546W44 at its expense at the earlier of Unit Turnover or within forty-five (45) days of request by a resident.  Any Category B retrofit to an individual unit that does not turn within the Retrofit Period or is not specifically requested to be performed will automatically be converted to an "on request" only (Category C) retrofit as of the expiration of the Retrofit Period.

c. All individual unit retrofits in Category C (including Category B retrofits converted to Category C by the expiration of the Retrofit Period) as detailed in **Exhibit B** shall be performed within forty-five (45) days of the request by a resident or prospective resident; except that if the dwelling unit to be leased by the prospective resident is occupied at the time the lease is signed and the request is made, the forty-five (45) day time period within which CREF 546W44 must complete the requested retrofit(s) shall run from the date the dwelling unit is vacated by the prior resident.  In any event, CREF 546W44 shall endeavor to complete the requested retrofit as soon as practicable.

d. To the extent CREF 546W44, despite having used reasonable best efforts, is unable to comply with any retrofit deadline for the individual units, CREF 546W44 shall, at

least five (5) days before the deadline, provide specific, written notice to FHJC that includes an explanation of the reasons the deadline cannot be met.  FHJC will not unreasonably withhold its consent to a reasonable extension of time for CREF 546W44 to perform the unit retrofit that is the subject of such notice.

e.  For the avoidance of doubt, the obligation to make the Category C retrofits within forty-five (45) days of the request by a resident or prospective resident shall continue after the end of the Retrofit Period.

f.  At the end of each calendar year until the expiration of the Retrofit Period, CREF 546W44 shall provide FHJC with a written notice describing the individual unit retrofits in **Exhibit B** that were made during the preceding year.

g.  Following the expiration of the Retrofit Period, but no later than six (6) months after the expiration of the Retrofit Period, CREF 546W44 shall ensure the Neutral Inspector has inspected the completed individual unit retrofits at the Subject Property in order to assess whether the specific retrofits detailed in **Exhibit B** (including those performed "on request") were completed in a good and workmanlike manner and in compliance with the "Retrofit Requirement" column for each Element as detailed in **Exhibit B.**

h.  FHJC shall be permitted to have its own representative present at this inspection of individual dwelling units at the Subject Property by the Neutral Inspector.  CREF 546W44 shall provide FHJC with notice of the date and time of inspection of the unit retrofits at the Subject Property when the inspection is confirmed with the Neutral Inspector, but in no case less than fourteen (14) days prior to the planned compliance inspection.

i.  Within thirty (30) days following the inspection the Neutral Inspector shall provide CREF 546W44 and FHJC with a written report of the Neutral Inspector's findings regarding the individual unit retrofits at the Subject Property.  If the Neutral Inspector finds that any of the required retrofits were not completed in compliance with the individual unit Retrofit Plan, the Neutral Inspector's report shall so indicate with particularity.

j.  CREF 546W44 agrees to promptly correct any such deviations from compliance from the individual unit Retrofit Plan as noted in the Neutral Inspector's report.  The foregoing inspection process shall be repeated as many times as necessary until the Neutral Inspector is satisfied that all individual unit retrofits[1] have been performed in a good and workmanlike manner and are compliant with the individual unit Retrofit Plan, at which time the Neutral Inspector shall issue a "Certificate of Compliance" to CREF 546W44 and FHJC for these individual unit retrofits.  The Neutral Inspector's Certificate of Compliance shall be deemed final and binding on FHJC as to the Subject Property and shall fully discharge CREF 546W44 from any further obligations to make retrofits to the individual units of the Subject Property under this Partial Consent Decree, other than any remaining individual unit retrofits required to be provided to residents upon request.

k.  In lieu of making a repeat on-site inspection, the Neutral Inspector, in the Neutral Inspector's reasonable discretion, may accept photographic and other evidence that

---

[1] With the exception of any Category C retrofits that have not been requested by a resident or prospective resident as of the date of the Inspection, or any Category B retrofits converted to Category C retrofits as defined by operation of Paragraph 23(b), above.

17

shows the corrected condition and any measurements necessary to demonstrate compliance with the individual unit Retrofit Plan.

l.  The costs and expenses of the Neutral Inspector and all required inspections shall be borne by CREF 546W44.  CREF 546W44 will make all reasonable efforts to ensure that the Inspector has access to the individual units required for inspection.

m.  Nothing in this Partial Consent Decree shall be read to relieve CREF 546W44 of the obligation to schedule (re-)inspections and complete individual dwelling unit retrofits detailed in the unit Retrofit Plan (other than those retrofits to be completed only "on request" for which no request is received).  In the event CREF 546W44, despite compliance with the notice requirements of this Partial Consent Decree, is unable to gain entry to any individual unit or permission to perform the individual unit retrofits for that unit type by the end of the Retrofit Period, CREF 546W44 shall, no more than three (3) months after the expiration of the Retrofit Period, provide specific, written notice to FHJC of the specific Category B retrofits that converted from "on turn" to "on request" as per Paragraph 23(b), above.

### *Obligation in the Event of Dislocation from Unit by Retrofits*

24. If a resident of a unit scheduled to undergo a retrofit pursuant to **Exhibit B** is dislocated from the unit for more than a fourteen (l4) consecutive hour period, CREF 546W44 (at its option) shall either provide the resident with alternative housing in an available furnished unit at the Subject Property or pay such resident the applicable federal government per diem rate for food and lodging for the New York City area (currently available at

https://www.gsa.gov/travel/plan-book/per-diem-rates ) for each day or half-day such resident is dislocated or will experience undue inconvenience or hardship. If the per diem option is selected,

the payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the payment to obtain alternative living accommodations while dislocated.

25. Present and prospective residents may not be charged any additional rent, deposit, fee, or other consideration, as consideration for the retrofits in those units in which retrofits (whether completed or not) are required. Nothing in this paragraph precludes CREF 546W44 or its successor owners from implementing rent increases, or imposing fees for any other permissible reason, at the Subject Property.

### *Modification to Planned Retrofits*

26.  CREF 546W44 shall use its best efforts to perform the retrofits set forth in the Retrofit Plans (**Exhibits A** and **B)** in the manner agreed-to pursuant to this Decree.  In the event that, under field conditions or constructability issues that the Parties could not have reasonably anticipated at the time the Retrofit Plans were negotiated and this Decree entered, CREF 546W44 determines that a condition cannot be retrofitted in the manner set forth in the Retrofit Plans, CREF 546W44 will so advise FHJC in writing by providing a description of the condition with supporting photographs and the proposed revised manner of retrofitting the condition. CREF 546W44 will seek FHJC's written consent to the proposed revised manner of retrofitting the condition or proposed substitution of materials or equipment, which FHJC shall not unreasonably withhold.  FHJC and CREF 546W44 will work together in good faith to resolve any disagreement that arises.

/

/

**SECTION VII**
**FAIR HOUSING POLICIES**

27.  The Defendants agree not to discriminate on the basis of disability as prohibited by the

Fair Housing Act, 42 U.S.C. § 3601, *et seq.,* and the New York State Human Rights Laws, New

York Executive Law § 296 *et seq.,* and the New York City Human Rights Law, New York City

Administrative Code § 8-107 *et seq.* This includes agreeing to comply with the Fair Housing

Act's design and construction requirements for new multifamily residential facilities, 42

U.S.C. § 3604(f)(3)(C).

28. The term "***discriminate***" as used in the preceding paragraph includes the following

conduct against residents or prospective residents on the basis of disability by, without

limitation:

    a.  Denying or withholding housing or otherwise making housing unavailable due to a
person's disability;

    b.  Representing to any person that housing is not available for inspection, or rental due
to that person's disability or the disability of a person intending to reside in the
housing;

    c.  Discriminating in the terms, conditions, privileges or facilities of rental because of
disability;

    d.  Making, printing, or publishing, or causing to be made, printed, or published any
notice, statement, or advertisement, with respect to the rental of housing that indicates
a preference, limitation, or discrimination based on disability; or

    e.  Coercing, intimidating, threatening, or interfering with any person, including
Plaintiffs, in the exercise or enjoyment of, or on account of their having aided or

encouraged any other person in the exercise or enjoyment of any right protected by federal, state, or New York City fair housing laws.

29. Within thirty (30) days of the Effective Date, CREF 546W44 and PG shall adopt and implement the Fair Housing Policy attached hereto as **Exhibit F**.  CREF 546W44 and PG will ensure that each of their respective principals or employees with responsibility for the development, design, construction, or rental of Covered Multifamily Dwellings receives a copy of the Fair Housing Policy.  During the Term of this Partial Consent Decree, any new (subsequent to the initial distribution) principal or employee with responsibility for the development, design, construction, or rental of Covered Multifamily Dwellings shall receive a copy of the Fair Housing Policy within thirty (30) days of hire date.

30. Annually during the Term of this Partial Consent Decree, CREF 546W44 shall provide information about available rental opportunities at the Subject Property to New York City non-profit organizations serving persons with disabilities identified on **Exhibit G**.  The information, substantially in the form of **Exhibit H**, shall include a description of the types of units at the Subject Property, a link to the Subject Property's website, and a general statement of availability or presence of accessibility features and options for physical modifications on request.

31. CREF 546W44 shall include a statement on all of its residential rental applications for the Subject Property stating the following:

> "Our company is committed to equal housing opportunity.  We do not discriminate based on race, color, national origin, religion, sex, disability, weight, height, familial status, sexual orientation, source of income, gender identity and expression, domestic partnership status, marital status, age, alienage or citizenship status, lawful occupation, military or veteran status, or status as a survivor of domestic violence or stalking."

32.  CREF 546 W44 shall use the fair housing logo, which is attached hereto as **Exhibit I** (not to scale), or the phrase "Equal Housing Opportunity" on marketing and advertising materials

(electronic, print, video, radio, etc., but limited to future printings of any hard copy materials) for the Subject Property or a CREF Covered Building and/or design and/or construction services provided for the Subject Property or a CREF Covered Building, and on CREF 546W44's websites for the Subject Property or a CREF Covered Building.

33.  CREF 546W44 will post and visibly display at each of its sales and rental offices serving the Subject Property, or a CREF Covered Building, a Housing and Urban Development (HUD) fair housing poster - HUD Form 928.1 - attached hereto as **Exhibit J.**  The fair housing poster required by this paragraph shall be displayed where it will be readily apparent to all persons seeking housing accommodations.  The fair housing poster shall be a minimum size of 11 inches by 14 inches and comply with the requirements set out in 24 C.F.R. Part 110.

34. PG shall use the fair housing logo, which is attached hereto as **Exhibit I** (not to scale), or the phrase "Equal Housing Opportunity" on marketing and advertising materials (electronic, print, video, radio, etc., but limited to future printings of any hard copy materials) for a PG Covered Building and/or design and/or construction services provided for a PG Covered Building, and on PG's websites for a PG Covered Building.

35.  PG will post and visibly display at each of its sales and rental offices serving a PG Covered Building, a Housing and Urban Development (HUD) fair housing poster - HUD Form 928.1 - attached hereto as **Exhibit J.**  The fair housing poster required by this paragraph shall be displayed where it will be readily apparent to all persons seeking housing accommodations.  The fair housing poster shall be a minimum size of 11 inches by 14 inches and comply with the requirements set out in 24 C.F.R. Part 110.

/

## SECTION VIII
## NON-DISCRIMINATION IN OTHER DESIGN AND CONSTRUCTION

### *CREF 546W44 Requirements*

36.   For the duration of this Partial Consent Decree, CREF 546W44 will retain, at its own expense, a third-party consultant with expertise in the Accessibility Standards (the "***Accessibility Consultant***" or "***AC***") to conduct a peer review of any CREF Covered Buildings.

37.   CREF 546W44 does not waive, and expressly reserves, all legal privileges and confidentiality with regard to any communication with the Accessibility Consultant and will have no obligation to produce any inspection or compliance reports or any other deliberative material or observations of the Accessibility Consultant to FHJC or any other individual or entity other than as specifically detailed in this Partial Consent Decree.

38. The Accessibility Consultant will review, prior to the commencement of construction at a CREF Covered Building, the architectural, site engineering, or other development plans for all Covered Multifamily Dwellings and the associated common use areas in the CREF Covered Building. Within thirty (30) days of receiving the documents the Accessibility Consultant will prepare a report for each such development that describes (i) the date(s) of the review; (ii) the street address of the development reviewed; (iii) the documents reviewed; and (iv) a description of the AC's findings with respect to compliance with the statutory accessibility requirements of the Fair Housing Act, 42 U.S.C.§ 3604(f)(3)(C) and the applicable accessibility requirements of the local building code.

39. If a certificate of occupancy for a CREF Covered Building is issued during the Term of this Partial Consent Decree, CREF 546W44 will cause the Accessibility Consultant to conduct a physical inspection of the development site (including a sampling of covered units) and identify

in writing conditions that, in the opinion of the AC, are inaccessible or, if constructed as designed, would be inaccessible, in violation of the FHAA or applicable building code. This inspection shall occur within thirty (30) days of the issuance of the certificate of occupancy. For all such Covered Buildings, CREF 546W44 agrees to remediate any such conditions prior to completion of construction.

40. During the Term of this Partial Consent Decree, and on not more than one (1) occasion per Covered Building annually, representatives of FHJC shall be permitted to inspect any CREF Covered Buildings that are open for in-person visit by prospective residents. FHJC shall give reasonable notice to CREF 546W44 of any such planned inspection, which shall occur during normal business hours at a mutually convenient date and time.

41. Nothing in this Section shall require CREF 546W44 to use the services of the Accessibility Consultant for any project that is not a Covered Building, or for any Covered Building issued a certificate of occupancy beyond the Term of this Partial Consent Decree.

### *PG Requirements*

42. For the duration of this Partial Consent Decree, PG will retain, at its own expense, an Accessibility Consultant to conduct a peer review of any PG Covered Buildings.

43. PG does not waive, and expressly reserves, all legal privileges and confidentiality with regard to any communication with the Accessibility Consultant and will have no obligation to produce any inspection or compliance reports or any other deliberative material or observations of the Accessibility Consultant to FHJC or any other individual or entity other than as specifically detailed in this Partial Consent Decree.

44. The Accessibility Consultant will review, prior to the commencement of construction at a PG Covered Building, the architectural, site engineering, or other development plans for all

Covered Multifamily Dwellings and the associated common use areas in the PG Covered Building.

45. Within thirty (30) days of receiving the documents the Accessibility Consultant will prepare a report for each such PG Covered Building that describes (i) the date(s) of the review; (ii) the street address of the development reviewed; (iii) the documents reviewed; and (iv) a description of the Accessibility Consultant's findings with respect to compliance with the statutory accessibility requirements of the Fair Housing Act, 42 U.S.C. §3604(f)(3)(C) and the applicable accessibility requirements of the local building code.  For all such projects, PG agrees to remediate any such conditions prior to the completion of construction.

46. If a certificate of occupancy for a PG Covered Building is issued during the Term of this Partial Consent Decree,  PG will cause the Accessibility Consultant to conduct a physical inspection of the development site (including a sampling of covered units) and identify in writing conditions that, in the opinion of the Accessibility Consultant, are inaccessible or, if constructed as designed, would be inaccessible, in violation of the FHAA or applicable building code.  This inspection shall occur within thirty (30) days of the issuance of the certificate of occupancy. For all such PG Covered Buildings, PG agrees to remediate any such conditions prior to completion of construction.

47. During the Term of this Partial Consent Decree, and on not more than one occasion per Covered Building annually, representatives of FHJC shall be permitted to inspect any PG Covered Buildings that are open for in-person visit by prospective residents.  FHJC shall give reasonable notice to PG of any such planned inspection, which shall occur during normal business hours at a mutually convenient date and time.

48. Nothing in this Section shall require PG to use the services of the Accessibility Consultant for any project that is not a Covered Building, or for any Covered Building issued a certificate of occupancy beyond the Term of this Partial Consent Decree.

## SECTION IX
## MANDATORY TRAINING

49. CREF 546W44 and PG shall ensure that they and their employees, as well as any entities (*e.g.*, firms) acting as their agents, and who have supervisory authority over the design and/or construction of Covered Buildings are familiar with the Fair Housing Act's design and construction requirements for new multifamily residential facilities.

50. Within six (6) months of the Effective Date, CREF 546W44 and PG shall provide fair housing accessibility training to all their employees who have supervisory authority over the design and / or construction of Covered Buildings.  The accessibility training will be a minimum of two hours long, and will cover the following topics: (i) the design and construction requirements of the FHAA, the Americans with Disabilities Act (as applied to multifamily residential dwellings), and state or local building codes as applied to multifamily residential dwellings; (ii)  CREF 546W44's and PG's duty to comply with federal, state, and local fair housing laws related to accessibility; and (iii) the terms of this Partial Consent Decree.  The training shall be conducted by a qualified third-party individual approved in advance by FHJC, and any expenses associated with this training shall be borne by CREF 546W44.  CREF 546W44and PG will keep written records of attendance and completion of the accessibility training session and provide certification of such attendance and completion within fourteen (14) days of each such training.

/

## SECTION X
## CETRA-SPECIFIC PROVISIONS

51. Within sixty (60) days of the Effective Date, the principal and employees of CETRA who are interior designers shall attend a two-hour in person training related to fair housing principles and practices, as described below.  The training shall be conducted by a qualified third-party individual approved in advance by FHJC, and any expenses associated with this training shall be borne by CETRA.  CETRA will keep written records of attendance and completion of the accessibility training session. Within fourteen (14) days of each such training, CETRA shall provide certification to FHJC of its principals' attendance at the training.

52.  The training for CETRA will cover the following topics: the design and construction requirements of the FHAA, the Accessibility Standards, the Americans with Disabilities Act, and state or local building codes as applied to multifamily residential dwellings, CETRA's duty to comply with federal, state, and local fair housing laws; and the terms of this Partial Consent Decree.

53. CETRA shall cooperate with and provide information and documents to CREF 546W44 or PG for use in the peer review process for all contracts CETRA has with CREF 546W44 or PG during the duration of this Partial Consent Decree that involve Covered Buildings.

54. For the duration of this Partial Consent Decree, CETRA shall conspicuously publish on its website and on marketing and advertising materials (electronic, print, video, radio, etc.) for design and/or construction services provided for multi-family dwellings the fair housing logo, which is attached hereto as **Exhibit I** (not to scale), or the phrase "Equal Housing Opportunity." CETRA's use of the fair housing logo and/or phrase "Equal Housing Opportunity" shall not be construed by the Parties as an indication that they are an FHAA/ADA design expert or architect.

27

## SECTION XI
## REPORTING AND RECORDKEEPING

55. Throughout the Term of this Partial Consent Decree, CREF 546W44 and PG shall maintain drawings, renderings, blueprints, plans, and other design and construction records concerning in the case of CREF 546W44, each CREF Covered Building, and in the case of PG, each PG Covered Building.  CREF 546W44 and PG shall maintain such records for at least one (1) year after the expiration of the Term of the Partial Consent Decree.

56. For the duration of this Partial Consent Decree, CREF 546W44, as to CREF Covered Buildings, and PG, as to PG Covered Buildings, shall advise FHJC in writing within fifteen (15) days of receipt of any written administrative or legal fair housing complaint regarding any Covered Building alleging discrimination on the basis of disability in housing in the form of accessibility as of the Effective Date. During the Term of this Decree, CREF 546W44, as to CREF Covered Buildings, and PG, as to PG Covered Buildings, shall also advise FHJC, in writing, within fifteen (15) days of the resolution of any such complaint.  No Defendant shall retaliate against or in any respect adversely affect any person that files a fair housing complaint against it.

57. Annually throughout the Term of this Partial Consent Decree on the anniversary of the Effective Date, CREF 546W44, in the case of a CREF Covered Building, and PG, in the case of a PG Covered Building, shall provide FHJC with a report ("***Covered Project Report***"). Each Covered Project Report shall identify (i) the name and address of each Covered Project; (ii) a description of the property and the individual units; (iii) the identity of the civil engineer of record; and (iv) the identity of the architect of record. ; If no CREF Covered Building exists

28

CREF 546W44 shall not be required to report. If no PG Covered Building exists, PG shall not be required to report.

58. Within thirty (30) days prior to the expiration of the Term of this Decree, CREF 546W44 and PG shall produce to FHJC certifications from their respective Accessibility Consultants stating the stage of development of all identified Covered Buildings within the FHJC service area.  The certifications from the Accessibility Consultant shall verify to the best of his or her knowledge and experience after reasonable inquiry the compliance of the accessible design and construction of such properties as reviewed during the Term of the Decree.

## SECTION XII
## TRANSFER OF INTEREST IN THE SUBJECT PROPERTY

59. Upon the sale or transfer, in whole or in part, of any of CREF 546W44's or any other entity's or person's interest(s) in the Subject Property, such seller or transferor shall be fully released from any continuing obligations as an owner of the Subject Property to retrofit, or to conduct or allow inspections or surveys of the Subject Property as specified in this Partial Consent Decree, so long as such seller or transferor has obtained in writing, as a condition of such sale or transfer, the purchaser's or transferee's assumption of such continuing obligations, so that the purchaser or transferee will be bound by the terms of this Partial Consent Decree to make retrofits, and allow or conduct inspections or surveys as set forth in this partial Consent Decree, and such purchaser or transferee agrees that such purchaser or transferee will be subject to the jurisdiction of this Court.

60.  If, prior to the completion of the retrofits specified in this Partial Consent Decree, an owner of the Subject Property decides to sell or transfer the Subject Property, in whole or in part, or any ownership interests in the Subject Property, or in any portion thereof, the owner of the

29

Subject Property will at least thirty (30) days prior to completion of the sale or transfer, unless the contract of sale shall provide for a shorter period between contract and closing, but at least fifteen (15) days prior to completion of the sale or transfer, provide each prospective buyer with a copy of this Partial Consent Decree and with written notice that the Subject Property is subject to this Partial Consent Decree, including, specifically, CREF 546W44's obligations to either (i) complete required retrofit work and allow inspections, or (ii) assign such obligations to the purchaser or transferee by obtaining the purchaser or transferee's commitment to be bound by this Partial Consent Decree.  Within ten (10) days after the completion of the sale or transfer, the selling owner of the Subject Property shall provide to FHJC by email and by either Overnight Mail or Hand Delivery written notice of the owner's sale or transfer of ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address, telephone number, and contact person.

## SECTION XIII
## RELEASES

61. Except for the right to enforce the terms of this Partial Consent Decree, including the obligations assumed by the Defendants hereunder, and in exchange for adequate consideration including Defendants' delivery of the Settlement Amount as set forth in Section V herein, Plaintiffs, on behalf of themselves and on behalf of their directors, officers, employees, successors, assigns, agents, trustees, insurers, and attorneys, each in their official capacity only, fully and forever release, acquit, and forever discharge with prejudice subject to the terms of this Partial Consent Decree, Defendants and each of their respective affiliates, joint venturers, joint venture partners, direct and indirect parent companies, direct and indirect subsidiary companies, beneficial owners or indirect beneficial owners, equity holders or indirect equity holders, lenders, insurers, and reinsurers, and each of their respective principals, members, partners, directors, employees, agents, representatives, officers, heirs,

30

assigns, subsidiaries, successors in interest, successor owners, attorneys, and insurers from any and all liability, claims, or rights of action, of any kind or nature whatsoever arising from the allegations set forth or described in the Complaint filed in the Action, whether known or unknown, including all claims for reasonable attorneys' fees and costs (hereinafter, "***Plaintiffs' Released Claims***"), *provided, however*, that Plaintiffs' Released Claims will not include any claims to enforce any provision of this Partial Consent Decree, *but provided, however,* that Plaintiffs' Released Claims expressly include all five of Plaintiffs' causes of action against each Defendant. Each of the Plaintiffs provide their respective releases to each Defendant on an individual basis, and the release to each Defendant is an individual release.  No breach of this Partial Consent Decree by a particular Defendant will have any impact on the release or obligations of any of the other Defendants.

62. In exchange for adequate consideration as set forth herein, each Defendant, on its own behalf and on behalf of its parents, subsidiaries, affiliated entities, successors, assigns, members, owners, directors, officers, agents, trustees, insurers, and attorneys, fully and forever releases, acquits, and forever discharges with prejudice, subject to the terms of this Partial Consent Decree, Plaintiffs, and Plaintiffs' principals, employees, agents, representatives, officers, heirs, assigns, subsidiaries, successors in interest, attorneys, and insurers from any and all liability, claims, or rights of action, of any kind or nature whatsoever arising from the allegations set forth or described in the Complaint and Answers in the Action, whether known or unknown, including all claims for reasonable attorneys' fees and costs (hereinafter, "***Defendants' Released Claims***").

63. The Parties expressly acknowledge and agree that this Partial Consent Decree, including without limitation the releases set forth in this Section XIII, but excluding any claims asserted by and against CREF 546W44, PG, and CETRA and each other by and between the Defendants,

constitutes a full and final release and waiver of any and all claims, causes of action, or demands – whether known or unknown, asserted or unasserted – that were or could have been raised in the above-captioned action.  Notwithstanding the foregoing, nothing in this Partial Consent Decree shall be construed to terminate, modify, or impair the existing Sutton Lease or the landlord-tenant relationship established by the Sutton Lease, which shall remain in full force and effect. Nothing herein, including without limitation the releases set forth in this Section XIII, shall be deemed to constitute a waiver or a release of any claims, causes of actions, cross-claims, liabilities, or damages as between CREF 546W44, PG, and CETRA, and rather, CREF 546W44, PG, and CETRA hereby expressly reserve and do not release any and all claims (known or unknown), causes of actions, cross-claims, liabilities, or damages as against one another, including with respect to this Action, the Subject Property, the cross-claims asserted as between CREF 546W44 and PG on the one hand, and CETRA on the other hand in this Action, or otherwise.

## SECTION XIV
## NOTICES

64. Unless otherwise set forth herein, all notices under or relating to this Partial Consent Decree shall be in writing and shall be addressed to the appropriate party at the address specified below or such other address as may be specified by such party, in writing in accordance with this Section.  Notices shall be deemed given and received (a) when personally delivered, or delivered by same-day courier; or (b) on the third business day after mailing by registered or certified mail, postage prepaid, return receipt requested; or (c) upon delivery when sent by prepaid overnight express delivery service (e.g., FedEx, UPS); or (d) when sent by email and upon the receipt by

the sending party of written confirmation from the receiving party; *provided*, *however*, that an automated email confirmation of delivery or read receipt shall not constitute such confirmation.

a. If to FHJC:

Fair Housing Justice Center, Legal Director
30-30 Northern Blvd. Suite 302
Long Island City, NY 11101
fhjc@fairhousingjustice.org
compliancemonitoring@fairhousingjustice.org

With a copy to:
Hanski Partners LLC
85 Delancey Street
New York, NY  10013
Attn:  Adam Hanski
ash@disabilityrightsny.com

b. If to Stason Sutton:

Hanski Partners LLC
85 Delancey Street
New York, NY  10013
Attn:  Adam Hanski
ash@disabilityrightsny.com

c. If to CREF 546W44 and/or PG:

CREF 546 West 44th Street, LLC
1980 Post Oak Blvd., Suite 1900
Houston, Texas 77056
Email:  notices@patrinely.com

With a copy to:
Theresa L. Kitay
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
3414 Peachtree Road NE
Monarch Plaza, Suite 1500
Email:  tkitay@bakerdonelson.com

d. If to CETRA:

John Cetra, FAIA

33

Founding Principal
CetraRuddy Architecture DPC
1 Battery Park Plaza, 8th Floor
New York, NY 10004
(212) 941-9801

With a copy to:

Elaine Gangel
Partner
Byrne & O'Neill, LP
26 Broadway, 3rd Floor
New York, NY  10004
(212) 422-9424
(917) 572-6800
eg@bonlaw.com

## SECTION XV
## NO ADMISSIONS

65. Nothing contained here shall be deemed to be an admission by Defendants that they have in any manner or way violated any rights defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York or the City of New York or any other jurisdiction.  The Parties have entered into this Partial Consent Decree solely for the purpose of avoiding the burdens and expense of protracted litigation.

## SECTION XVI
## CONSTRUCTION

66. This Partial Consent Decree will be deemed to have been jointly drafted, and no provision herein will be interpreted or construed for or against any Party because such Party drafted or requested such provision or this Partial Consent Decree as a whole.

67.  The headings contained herein are for convenience of reference only and are not intended to define, limit, expand or describe the scope or intent of any provision of this Partial Consent Decree.

68.  This Partial Consent Decree contains all the terms and conditions agreed upon by the parties hereto, and no oral Consent Decree entered into at any time nor any written Consent Decree entered into prior to the execution of this Partial Consent Decree regarding the subject matter of the instant proceeding will be deemed to exist, to bind the Parties hereto, or to vary the terms and conditions contained herein.

69.  Any material modification to this Partial Consent Decree must be in writing, signed by the Parties, and shall be effective upon approval by the Court. Any non-material modification to this Partial Consent Decree also must be in writing and shall be effective when signed by the Parties and filed with the Court.  Extensions of time to complete obligations of the Partial Consent Decree (other than payment obligations) that are within the term of this Partial Consent Decree are considered "non-material" modifications and may be made upon agreement of the Parties without approval of the Court.

70. CREF 546W44 shall use reasonable best efforts to comply with the deadlines set forth in this Partial Consent Decree.  In the event CREF 546W44 is unable to comply with any such deadline despite its reasonable best efforts (with the exception of the delivery of the Settlement Amount as described in Paragraphs 9 and 11 above), CREF 546W44 shall advise FHJC at least ten (10) days prior to the deadline (unless circumstances preclude providing ten (10) days' notice), in writing and with specificity which deadline cannot be met and the reason it cannot be met.  FHJC will not unreasonably withhold its consent to a reasonable extension of time for CREF 546W44 to perform the obligation.  The deadlines in this Partial Consent Decree may be

extended or modified by written agreement of the relevant Defendants and FHJC without further order of the Court, so long as the deadline would not affect the term of this Partial Consent Decree and any such modification does not affect the delivery of the Settlement Amount.

71.  If any provision in this Partial Consent Decree is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Partial Consent Decree will endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision will materially affect the intent of the Partial Consent Decree.  The parties to this Partial Consent Decree will consult and use their best efforts to agree upon a valid and enforceable provision that will be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Partial Consent Decree.

72.  Except as set forth herein, each Party shall bear their own fees, expenses and costs related to the Action.

73.  The parties to this Partial Consent Decree expressly represent and warrant that they have full legal capacity to enter into this Partial Consent Decree, that they have carefully read and fully understand this Partial Consent Decree, that they have had the opportunity to review this Partial Consent Decree with their attorneys, and that they have executed this Partial Consent Decree voluntarily, without duress, coercion, or undue influence.

74.  This Partial Consent Decree may be executed in any number of counterparts and each such counterpart will be deemed to be an original.  For purposes of executing this Partial Consent Decree, a document signed and transmitted by facsimile or email will be treated as an original document and have the same binding legal effect as an original signature on an original document.

75.  Each party to this Partial Consent Decree shall cooperate fully and shall do and perform, or cause to be done and performed, all such further acts as any other Party may reasonably request in order to carry out the terms of this Partial Consent Decree, and shall execute and deliver all such other consents, approvals, stipulations, agreements, certificates, instruments and documents, as any other Party may reasonably request in order to carry out the intent and accomplish the purposes of this Partial Consent Decree and the consummation of the agreements contemplated hereby. Without limitation, Plaintiffs shall execute any consents, stipulations, or documents in furtherance of the Partial Consent Decree.

**THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK**

The undersigned apply for and consent to the entry of this Partial Consent Decree:

**APPROVED AS TO FORM:**

*For Plaintiffs Stason Sutton and Fair Housing Justice Center, Inc:*

HANSKI PARTNERS LLC

By: _____
Adam ~~Robert G~~. Hanski, Esq.
85 Delancey ~~40 Worth~~ Street
~~Suite602~~ New York, NY 10002
(212) 248.7400
*Attorneys for Plaintiffs Stason Sutton and Fair Housing Justice Center, Inc*
Date:  11/5/25_____

*For Defendants CREF 546 West 44th Street, LLC, Patrinely Group, LLC:*

BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.

By: _____
   Theresa L. Kitay, Esq.
   3414 Peachtree Road
   Monarch Plaza, Suite 1500
   Atlanta, GA  30326
   (404) 443-6745

Date: _____

*For Defendant CETRA/CRI Architecture, PLLC*:

BYRNE & O'NEILL, LLP

By: _____
   Elaine Gangel, Esq.
   11 Broadway - Suite 910
   New York, New York 10004
    (212) 422-9424
   *Attorneys for Defendant CETRA/CRI Architecture, PLLC*

Date: _____

CLIFTON BUDD & DEMARIA, LLP

By: _____
   Arthur J. Robb, Esq.
   The Empire State Building
   350 Fifth Avenue, 61st Floor
   New York, NY  10118
   (212) 687-7410

Date: _____

38

The undersigned apply for and consent to the entry of this Partial Consent Decree:

**APPROVED AS TO FORM:**

*For Plaintiffs Stason Sutton and Fair Housing Justice Center, Inc:*

HANSKI PARTNERS LLC

By: _____
    Robert G. Hanski, Esq.
    40 Worth Street, Suite 602
    New York, NY 10013
    (212) 248.7400
*Attorneys for Plaintiffs Stason Sutton and Fair Housing Justice Center, Inc*

Date: _____

*For Defendant CETRA/CRI Architecture, PLLC:*

BYRNE & O'NEILL, LLP

By: _____
    Elaine Gangel, Esq.
    11 Broadway - Suite 910
    New York, New York 10004
    (212) 422-9424
    *Attorneys for Defendant CETRA/CRI Architecture, PLLC*

Date: __11/4/25_____

*For Defendants CREF 546 West 44th Street, LLC, Patrinely Group, LLC:*

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

By: _____
    Theresa L. Kitay, Esq.
    3414 Peachtree Road
    Monarch Plaza, Suite 1500
    Atlanta, GA 30326
    (404) 443-6745

Date: __11/4/2025_____

CLIFTON BUDD & DEMARIA, LLP

By: _____
    Arthur J. Robb, Esq.
    The Empire State Building
    350 Fifth Avenue, 61st Floor
    New York, NY 10118
    (212) 687-7410

Date: _____

The undersigned apply for and consent to the entry of this Partial Consent Decree:

**APPROVED AS TO FORM:**

*For Plaintiffs Stason Sutton and Fair Housing Justice Center, Inc:*

HANSKI PARTNERS LLC

By: _____
    Robert G. Hanski, Esq.
    40 Worth Street, Suite 602
    New York, NY 10013
    (212) 248.7400
*Attorneys for Plaintiffs Stason Sutton and Fair Housing Justice Center, Inc*

Date: _____


*For Defendants CREF 546 West 44th Street, LLC, Patrinely Group, LLC:*

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

By: _____
    Theresa L. Kitay, Esq.
    3414 Peachtree Road
    Monarch Plaza, Suite 1500
    Atlanta, GA  30326
    (404) 443-6745

Date: _____


*For Defendant CETRA/CRI Architecture, PLLC*:

BYRNE & O'NEILL, LLP

By: _____
    Elaine Gangel, Esq.
    11 Broadway - Suite 910
    New York, New York 10004
    (212) 422-9424
    *Attorneys for Defendant CETRA/CRI Architecture, PLLC*

Date: _____


CLIFTON BUDD & DEMARIA, LLP

By: _____
    Arthur J. Robb, Esq.
    The Empire State Building
    350 Fifth Avenue, 61st Floor
    New York, NY  10118
    (212) 687-7410

Date: _____11/6/2025_____

**AGREED TO BY PLAINTIFFS:**

_____
Stason Sutton, an individual

*Fair Housing Justice Center, Inc*

By: ___*Michele Cortese*___
    Michele Cortese
    Interim Executive Director
    Fair Housing Justice Center, Inc.

Date: ___11.5.25_____

**AGREED TO BY DEFENDANTS:**

*CREF 546 West 44th Street, LLC, a Delaware limited liability company*

By: CREF 546 West 44th Street, L.P., a
    Delaware limited partnership, its sole
    member

   By:  CREF NY GP, LLC, a Delaware
     limited liability company, its sole
     general partner

    By:_____
     C. Dean Patrinely
     President

*Patrinely Group, LLC*

By: _____
    Donald G. Thomas II
    Chief Operating Officer, Vice President
    and Secretary

Date: _____

*CETRA/CRI Architecture, PLLC (nka CetraRuddy Architecture DPC)*

By: _____
    John Cetra, FAIA
    Founding Principal

Date: _____

It is so **ORDERED** this _____ day of _____, 2025.


_____
HON. JENNIFER L. ROCHON

**AGREED TO BY PLAINTIFFS:**

_____
Stason Sutton, an individual

*Fair Housing Justice Center, Inc*

By: _____
    Michele Cortese
    Interim Executive Director
    Fair Housing Justice Center, Inc.

Date: _____


**AGREED TO BY DEFENDANTS:**

*CREF 546 West 44th Street, LLC, a*
*Delaware limited liability company*

By: CREF 546 West 44th Street, L.P., a
    Delaware limited partnership, its sole
    member

    By: CREF NY GP, LLC, a Delaware
        limited liability company, its sole
        general partner

        By:_____
          C. Dean Patrinely
          President

*Patrinely Group, LLC*

By: _____
    Donald G. Thomas II
    Chief Operating Officer, Vice President
    and Secretary

Date: _____ 11/4/2025 _____

*CETRA/CRI Architecture, PLLC (nka*
*CetraRuddy Architecture DPC)*

By: _____
    John Cetra, FAIA
    Founding Principal

Date: _____


It is so **ORDERED** this _____ day of _____, 2025.


_____
HON. JENNIFER L. ROCHON

_____
Stason Sutton, an individual

*Fair Housing Justice Center, Inc*

By: _____
    Michele Cortese
    Interim Executive Director
    Fair Housing Justice Center, Inc.

Date: _____

*CREF 546 West 44th Street, LLC, a
Delaware limited liability company*

By: CREF 546 West 44th Street, L.P., a
    Delaware limited partnership, its sole
    member

    By:  CREF NY GP, LLC, a Delaware
        limited liability company, its sole
        general partner

        By:_____
            C. Dean Patrinely
            President

*Patrinely Group, LLC*

By: _____
    Donald G. Thomas II
    Chief Operating Officer, Vice President
    and Secretary

Date: _____

*CETRA/CRI Architecture PLLC (nka
CetraRuddy Architecture DPC)*

By: _____
    John Cetra, FAIA
    Founding Principal

Date: 11-03-2025

It is so **ORDERED** this  10th  day of  November _____, 2025.

_____
HON. JENNIFER L. ROCHON
United States District Judge

39

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STASON SUTTON AND FAIR HOUSING JUSTICE CENTER, INC., Plaintiffs, | 1:18-cv-02146 JLR (HJR) |
| v. | |
| CREF 546 WEST 44TH STREET, LLC, PATRINELY GROUP, LLC, AND CETRA/CRI ARCHITECTURE, PLLC, Defendants. | |

# EXHIBITS A-J

<span style="color:red">EXHIBIT A</span>

## COMMON AREA RETROFITS

| Building | | 546 West 44th Street, New York, NY 10036 | | | |
|---|---|---|---|---|---|
| Tower: | | North Tower | | | |
| Ref. No.[1] | Floor | Element | Existing Condition[2] | Retrofit Requirement | Notes |
| 1 | Roof | North Tower: Roof Terrace, Door (elevator lobby/terrace), Exterior Threshold, Gap | A gap at the exterior side of the threshold is 3" wide. | Adjust pavers | |
| 2 | Roof | North Tower: Roof Terrace, Door (elevator lobby/terrace), Change in Level | A 3/4" change in level between the interior floor surface and the exterior floor surface was measured (1"high interior threshold minus1-3/4" exterior threshold equals 3/4"). See items 003and 004. | Adjust pavers | |
| 3 | Roof | North Tower: Roof Terrace, Door (elevator lobby/terrace), Interior Threshold, Height | 1" high (interior side) threshold was measured. | Install adaptive ramp. | |

[1] "Ref. No." refers to the column titled "Ref." in the report of Plaintiffs' expert ("Plaintiffs' Expert Report").
[2] "Existing Condition" refers to the condition as described by plaintiffs' expert in Plaintiffs' Expert Report pursuant to the inspections performed on December 4, 2018, December 5, 2018, and April 26, 2019.

| | | | | | |
|---|---|---|---|---|---|
| **4** | Roof | North Tower: Roof Terrace, Door (elevator lobby/terrace), Exterior Threshold, Height | 1-3/4" high (exterior side) threshold was measured. | Install adaptive ramp. | |
| **10** | 16 | North Tower: 16th Floor, Refuse Room, Chute Door, Hardware | The chute door has a T-handle which requires tight grasping and twisting of the wrist to operate. | Take video of opening the chute with a closed fist. | |
| **12** | 14 | North Tower: 14th Floor, Refuse Room, Chute Door, Hardware | The chute door has a T-handle which requires tight grasping and twisting of the wrist to operate. | Take video of opening the chute with a closed fist. | |
| **14** | 1 | North Tower: 10th Floor, Refuse Room, Chute Door, Hardware | The chute door has a T-handle which requires tight grasping and twisting of the wrist to operate. | Take video of opening the chute with a closed fist. | |
| **15** | 1 | North Tower: 1st Floor, Children's Playroom, Door, Interior Threshold, Height | 1-1/4" high (interior side) threshold was measured. 3/4" is vertical. | Remove and replace the threshold. | |
| **16** | 1 | North Tower: 1st Floor, Children's Playroom, Door, Exterior Threshold, Height | 7/8" high (exterior side) threshold was measured. 1/4" is vertical. | Remove and replace the threshold. | |

Exhibit "A" - South Tower - 3

| | | | | | |
|---|---|---|---|---|---|
| **18** | 1 | North Tower: 1st Floor, Children's Playroom, Door, Opening Force | 6.03 to 6.26 pounds opening force was measured. | Adjust opening pressure or replace closer. | |
| **19** | | | Operable part is 59" AFF. | Install thermostat cover with lock. | |
| **20** | 1 | North Tower: 1st Floor, Children's Playroom Toilet, Door, Exterior Threshold, Height | 1" high (exterior side) threshold was measured. 3/4" is vertical. | Remove and replace the threshold. | |
| **22** | 1 | North Tower:1st Floor, Children's Playroom Toilet, Door, Clear Width | The door only provides 31-1/4" of clear width. | Remove existing hinges and replace with swing-clear hinges. | |
| **24** | 1 | North Tower: 1st Floor, Pet Spa, Door, Exterior Threshold, Height | 7/8" high (exterior side) threshold was measured. 1/4" is vertical. | Remove and replace the threshold. | |
| **26** | 1 | North Tower: 1st Floor, Pet Spa, Door, Opening Force | 5.78 to 6.32 pounds opening force was measured. | Adjust opening pressure or replace closer. | |
| **27** | 1 | North Tower: 1st Floor, Pet Spa, Wash | The leash bar is 58" AFF (and 10" back from the edge of the wash station). | Remove existing pet wash station and replace with a pet wash station | |

| | | | | | |
|---|---|---|---|---|---|
| | | Station, Operable Parts | | that has compliant operable parts. | |
| 28 | 1 | North Tower: 1st Floor, Pet Spa, Wash Station, Operable Parts | The faucet controls are 48-1/2" AFF (and 8" back from the edge of the wash station). | Remove existing pet wash station and replace with a pet wash station that has compliant operable parts. | |
| 29 | 1 | North Tower: 1st Floor, Pet Spa, Wash Station, Operable Parts | The storage shelf is 63-1/2" AFF (and 10" back from the edge of the wash station). | Remove existing pet wash station and replace with a pet wash station that has compliant operable parts. | |
| 31 | 1 | North Tower: 1st Floor, Laundry Room, Door, Opening Force | 5.07 to 5.89 pounds opening force was measured. | Adjust opening pressure or replace closer. | |
| 32 | 1 | North Tower: 1st Floor, Laundry Room, Thermostat, Operable Parts | Operable part is 64-1/2" AFF. | Install thermostat cover with lock. | |
| 33 | 1 | North Tower: 1st Floor, Laundry Room, Folding Table, Top of Work Surface | The top of the work surface at the folding table is 36-1/4" above the finish floor. | Remove the table. | |
| 34 | 1 | North Tower: 1st Floor, Laundry Room, Accessible Route | There is no accessible route to the laundry card station. Only 30-3/4" clear was measured between the | Remove the table. | |

| | | | | | |
|---|---|---|---|---|---|
| | | | founding table and the laundry equipment. | | |
| **35** | 1 | North Tower: 1st Floor, Laundry Room, Laundry Card Station, Operable Parts | The card swipe is 53" AFF. The top button is 52" AFF. | Lower the card swipe below 48 inches AFF, measured to the top of the device. | |
| **36** | 1 | North Tower:1st Floor,Entrance/Exit (West 44th St) Intercom,Operable Parts | Highest button is 57-1/4" AFF. | Lower the intercom below 48 inches AFF, measured to the top of the device. | |
| **37** | 1 | North Tower: 1st Floor, Entrance/Exit (West 44th St) Exterior Doors, Maneuvering, Pull Side | The ground surface within the pull side maneuvering clearances slope more than 2.0%. The east leaf of the doorway slopes 4.5% within 60" perpendicular to the doorway. The center of the doorway slopes 4.9% within 60" perpendicular to the doorway. The west leaf of the doorway slopes 4.4% within 60" perpendicular to the doorway. | Install Low Power Door Operator w Push Button (aka Auto Door) | |
| **38** | 1 | North Tower: 1st Floor, Entrance/Exit (West 44th St) | 1/2" high (exterior side) threshold was measured. 1/2" is vertical. | Remove and replace. | |

| | | | | |
|---|---|---|---|---|
| | | Exterior Doors, Exterior Threshold, Height | | |
| **40** | 1 | North Tower: 1st Floor, Entrance/Exit (West 44th St) Exterior Doors, Maneuvering, Push Side | The ground surface within the push side maneuvering clearances slope more than 2.0%. The east leaf of the doorway slopes 1.6% within 48" perpendicular to the doorway. The center of the doorway slopes 2.8% within 48" perpendicular to the doorway. The west leaf of the doorway slopes 3.2% within 48" perpendicular to the doorway. | Install Low Power Door Operator w Push Button (aka Auto Door). | |
| **41** | 1 | North Tower: 1st Floor, Entrance/Exit (West 44th St) Interior East Doors, Opening Force | 5.88 to 6.32 pounds opening force was measured. | Adjust opening pressure or replace closer. | |
| **42** | 1 | North Tower: 1st Floor, Entrance/Exit (West 44th St) Interior West Doors, Opening Force | 6.17 to 7.92 pounds opening force was measured. | Adjust opening pressure or replace closer. | |

| | | | | | |
|---|---|---|---|---|---|
| **43** | Basement | North Tower: Basement, Fitness Center, Door (active leaf), Opening Force | 7.57 to 8.05 pounds opening force was measured. | Adjust opening pressure or replace closer. | |
| **44** | Basement | North Tower: Basement, Fitness Center, Communication Phone, Operable Parts | Operable part is 62-1/2" AFF. | Remove phone, or lower the courtesy phone below 48 inches AFF, measured to the top of the phone. | Defendants to confirm the remediation they will perform prior to execution. |
| **45** | Basement | North Tower: Basement, Fitness Center, Paper Towel Dispenser, Operable Parts | Operable part is 53" AFF. | Lower dispenser below 48 inches AFF, measured to the top of the dispenser. Or, keep existing dispenser and add a dispenser below 48 inches AFF, measured to the top of the new dispenser. | Defendants to confirm the remediation they will perform prior to execution. |
| **46** | Basement | North Tower: Basement, Fitness Center, Kleen-Up Dispenser (#1), Operable Parts | Operable part is 61-1/2" AFF. | Lower dispenser below 48 inches AFF, measured to the top of the dispenser. Or, keep existing dispenser and add a dispenser below 48 inches AFF, measured to the top of the new dispenser. | Defendants to confirm the remediation they will perform prior to execution. |

| | | | | | |
|---|---|---|---|---|---|
| **47** | Basement | North Tower: Basement, Fitness Center, Kleen-Up Dispenser (#2), Operable Parts | Operable part is 61-1/2" AFF. | Lower dispenser below 48 inches AFF, measured to the top of the dispenser. Or, keep existing dispenser and add a dispenser below 48 inches AFF, measured to the top of the new dispenser. | Defendants to confirm the remediation they will perform prior to execution. |
| **48** | Basement | North Tower: Basement, Fitness Center, Kleen-Up Dispenser (#3), Operable Parts | Operable part is 58" AFF. | Lower dispenser below 48 inches AFF, measured to the top of the dispenser. Or, keep existing dispenser and add a dispenser below 48 inches AFF, measured to the top of the new dispenser. | Defendants to confirm the remediation they will perform prior to execution. |
| 50 | Basement | North Tower: Basement, Fitness Center S. Toilet, Door, Clear Width | The door only provides 31-1/4" of clear width. | Remove existing hinges and replace with swing-clear hinges. | |
| 51 | Basement | North Tower: Basement, Fitness Center S. Toilet, Water Closet, Rear Wall Grab Bar | Grab bar only extends 9-1/2" from the centerline of the water closet on one side. | Shift the existing grab bar towards the wall so that 12 inches extends beyond the centerline of the toilet. | |

| 53 | Basement | North Tower: Basement, Fitness Center S. Toilet, Mirror, Location | The bottom edge of the reflecting surface is 40-3/4" above the finish floor. | Lower the mirror so that the bottom of the reflecting surface is no more than 40 inches AFF. | |
|----|----------|---------|---------|---------|---|
| 54 | Basement | North Tower: Basement, Fitness Center N. Toilet, Water Closet, Side Wall Grab Bar | Grab bar only extends 42" from the rear wall. | Shift the existing grab bar away from the rear wall so that the distance between the rear wall and the centerline of the farthest escutcheon plate is 54 inches. | |
| 56 | Basement | North Tower: Basement, Fitness Center, Doors (to/from courtyard), Exterior Threshold, Height | 3/4" high (exterior side) threshold was measured. 1/2" is vertical. | Remove and replace the threshold. | |

| Building | | 546 West 44th Street, New York, NY 10036 | | | |
| Tower | | South Tower | | | |
| Ref. No.[3] | Floor | Element | Existing Condition[4] | Retrofit Requirement | Notes |
|---|---|---|---|---|---|
| 57 | Roof | South Tower: Roof Terrace, Door (elevator lobby/terrace), Exterior Threshold, Gap | A gap at the exterior side of the threshold is 2-7/8" wide. | Adjust pavers. | |
| 58 | Roof | South Tower: Roof Terrace, Door (elevator lobby/terrace), Interior Threshold, Height | 1" high (interior side) threshold was measured. | Remove and replace the threshold. | |
| 59 | Roof | South Tower: Roof Terrace, Door (elevator lobby/terrace), Exterior Threshold, Height | 1" high (exterior side) threshold was measured. | Remove and replace the threshold. | |
| 60 | Roof | South Tower: Roof Terrace-west, Door (sundeck/exit), Clear Width | The door does not open a full 90 degrees. | Fix the door so that it opens at least a full 90 degrees. | |

[3] "Ref. No." refers to the column titled "Ref." in Plaintiffs' Expert Report.
[4] "Existing Condition" refers to the condition as described by plaintiffs' expert in Plaintiffs' Expert Report pursuant to the inspections performed on December 4, 2018, December 5, 2018, and April 26, 2019.

| | | | | | |
|---|---|---|---|---|---|
| **61** | Roof | South Tower: Roof Terrace-west, Door (sundeck/exit), Hardware, Pull | The door pull is only 3/4" deep requiring tight grasping and tight pinching. | Take video of opening the chute with a closed fist. | |
| **63** | Roof | South Tower: Roof Terrace-east, Door (bbq/exit), Clear Width | The door does not open a full 90 degrees. | Fix the door so that it opens at least a full 90 degrees. | |
| **64** | Roof | South Tower: Roof Terrace-east, Door (bbq/exit), Maneuvering, Pull Side | While 60" perpendicular to the doorway was measured, only 3/4" parallel to doorway beyond the latch was measured | Remove the door and reinstall the door at the far end of the passageway. | |
| **65** | Roof | South Tower: Roof Terrace-east, Door (bbq/exit), Hardware, Pull | The door pull is only 3/4" deep requiring tight grasping and tight pinching. | Take video of opening the chute with a closed fist. | |
| **66** | Roof | South Tower: Roof Terrace-west, Shower, Accessible Route | There is a step to/from the shower. 4-5/8" was measured at the step. | Add an accessible handheld rinsing unit in an accessible location. | |
| **67** | Roof | South Tower: Roof Terrace-west, Shower, Clear Floor Space | The shower platform is only 45-3/4" by 39-1/8" which does not permit a clear floor space at the operable parts of the shower. | Add an accessible handheld rinsing unit in an accessible location. | |
| **69** | Roof | South Tower: Roof Terrace-west, Wet Bar, Sink, Clear Floor Space | A pipe is located 22" from the centerline of the fixture and obstructed the clear floor space at the sink. | Install one accessible wet bar/dining area. | |

| | | | | | |
|---|---|---|---|---|---|
| **70** | Roof | South Tower: Roof Terrace-west, Wet Bar, Sink, Height | The sink counter/rim is 36" above the finish floor. | Install one accessible wet bar/dining area. | |
| **71** | Roof | South Tower: Roof Terrace-west, Wet Bar, Top of Dining Surface | The top of the dining surface at the wet bar is 48-3/4" above the finish floor. | Install one accessible wet bar/dining area. | |
| **72** | Roof | South Tower: Roof Terrace-west, Tables, Clear Floor Space | Four (4) tables are provided. None of the tables are accessible due to the pedestal under the tables which obstructs a clear floor space positioned for a forward approach. | Add one accessible table. | |
| **73** | 10 | South Tower: 10th Floor, Refuse Room, Chute Door, Hardware | The chute door has a T-handle which requires tight grasping and twisting of the wrist to operate. | Take video of opening the chute with a closed fist. | |
| **74** | 8 | South Tower: 8th Floor, Refuse Room, Chute Door, Hardware | The chute door has a T-handle which requires tight grasping and twisting of the wrist to operate. | Take video of opening the chute with a closed fist. | |
| **76** | 6 | South Tower: 6th Floor, Refuse Room, Chute Door, Hardware | The chute door has a T-handle which requires tight grasping and twisting of the wrist to operate. | Take video of opening the chute with a closed fist. | |

| | 1 | South Tower: 1st Floor, Lobby, Service Counter | The counter is 48-5/8" high above the finish floor. | Develop policy to ensure that the accessible counter remains free of boxes or other obstructions. Install clearly visible signage indicating where the accessible counter is located. | Defendants to provide policy language for inclusion in this exhibit prior to execution. |
|---|---|---|---|---|---|
| **77** | | | | | |
| **78** | 1 | South Tower: 1st Floor, Lobby, Accessible Route | An accessible route is not provided to all the mailboxes. Only 30-3/4" clear was measured between the 1st row of the mailboxes and the and the column. | Adjust mailbox bays so that no less than 36 inches is provide between each. | |
| **79** | 1 | South Tower: 1st Floor, Lobby, Accessible Route | An accessible route is not provided to all the mailboxes. Only 31-3/4" clear was measured between the 2nd row and 3rd row of mailboxes. | Adjust mailbox bays so that no less than 36 inches is provide between each. | |
| **80** | 1 | South Tower: 1st Floor, Leasing Office, Door, Opening Force | 7.64 pounds opening force was measured. | Adjust opening pressure or replace closer. | |
| **81** | 1 | South Tower: 1st Floor, Leasing Office, Accessible Route | An accessible route is not provided to the leasing office. Only 25" clear was measured between the desk and the | Adjust location of furniture so that an accessible route is provided. | Defendants to provide policy language for inclusion in this |

| | | | | | exhibit prior to execution. |
|---|---|---|---|---|---|
| **82** | Basement | South Tower: Basement, Private Dining Room, Protruding Object | Hood is only 61-3/4" AFF; appears to project 5-1/2" into circulation path. | Install barrier on the cabinet face. Barrier must be less than 27 inches AFF. | |
| **83** | Basement | South Tower: Basement, Private Dining Room, Double Oven Controls, Operable Parts | Operable parts are 71" to 74" AFF. | Replace double wall oven so that all operable parts are less than 48 inches AFF, measured to the top of operable parts. | |
| **84** | Basement | South Tower: Basement, Private Dining Room, Microwave, Operable Parts | Operable part is 7" AFF. | Install microwave on the countertop. | |
| **86** | Basement | South Tower: Basement, Lounge Toilet, Door, Clear Width | The door only provides 31-3/8" of clear width. | Remove existing hinges and replace with swing-clear hinges. | |
| **88** | Basement | South Tower: Basement, Screening Room, Table, Top of Work Surface | The top of the work surface at the table is 37-1/4" above the finish floor. | Remove table. | |

| | | | | | |
|---|---|---|---|---|---|
| **89** | Basement | South Tower: Basement, Screening Room, Communication Phone, Operable Parts | Operable part is 65" AFF. | Remove phone, or lower the phone below 48 inches AFF, measured to the top of the phone. | Defendants to confirm the remediation they will perform prior to execution. |
| **90** | Basement | South Tower: Basement, Screening Room, Digital Display, Operable Parts | Operable part is 63-1/4" AFF. | Install lock box or sign indicating "employees only." | Defendants to provide policy language for inclusion in this exhibit prior to execution. |
| **91** | Basement | South Tower: Basement, Screening Room, Door (rear), Maneuvering, Pull Side | While 60" perpendicular to the doorway was measured, only 10" parallel to doorway beyond the latch was measured. | Remove table. | |
| **92** | Basement | South Tower: Basement, Coffee Bar, Table,Top of Work Surface | The top of the work surface at the table is 35-3/4" above the finish floor. | Remove table. | |
| **94** | Basement | South Tower: Basement, Coffee Bar, Sink, Height | The sink counter/rim is 35-3/4" above the finish floor. Furthermore, the sink is 11" deep. | Remove the existing sink/counter area and replace with accessible sink/counter area. | |
| **95** | Basement | South Tower: Basement, Coffee Bar, Coffee Machine, Operable Parts | Operable part is 58" to 63-3/4" AFF. | Relocate the coffee machine so that all operable parts are no more than 48 inches AFF. | |

| | | | | | |
|---|---|---|---|---|---|
| **99** | 1 | Courtyard: 1st Floor, Entrance/Exit (to/from north tower) Exterior Door, Clear Width | The door does not open a full 90 degrees. | Fix the door so that it opens at least a full 90 degrees. | |
| **101** | Basement | Courtyard: Basement, Table, Clear Floor Space | One (1) table is provided. The table is not accessible due to the pedestal under the table which obstructs a clear floor space positioned for a forward approach. | Install an accessible table. | |

**Exhibit B**
### 546 West 44th Street
### Unit Retrofits

|  | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| | | | **NORTH TOWER UNITS** | | |
| 1 | 1H, 3-11H - North (5H) | 169 | Entry closet is 101" deep with door providing 31-1/4" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 2 | | 170 | Master bedroom door provides 31" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 7 | | 176 | Hall (tub) bathroom door has 45" perpendicular pull side maneuvering space. | Reverse swing of door to provide maneuvering space. | Category A |
| 8 | | 177 | Hall bathroom tub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub. (Stock will be kept onsite and replenished as needed.) | Category A |
| 9 | | 178 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 10 | | 179 | An accessible kitchen sink is not provided. The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |

|  | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| 11 | 1E, 3-11E - North (0 bed / 1 bath) (10E) | 193 | Hall bathroom tub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub. (Stock will be kept onsite and replenished as needed.) | Category A |
| 13 |  | 195 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 14 |  | 196 | The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 15 | 12F - North (2 bed / 2 bath) | 227 | Terrace door interior threshold is 1-1/4" high. | Modify threshold on request. | Category C |
| 16 |  | 228 | Terrace door exterior threshold is 2-1/4" high. | Applied ramp on request. | Category C |
| 17 | 14E - North (2 bed / 2 bath) | 231 | Terrace door interior threshold is 3/4" high. | Bevel threshold on request. | Category C |
| 18 |  | 232 | Terrace door exterior threshold is 2-1/4" high. | Applied ramp on request. | Category C |
| 19 | 15D - North (2 bed / 2 bath) | 234 | Terrace door interior threshold is 1-1/4" high. | Modify threshold on request. | Category C |
| 20 |  | 235 | Terrace door exterior threshold is 2-1/2" high. | Applied ramp on request. | Category C |
| 21 | 1-11A - North (1 bed / 1 bath) (5A) | 135 | Entry closet is 53-1/4" deep and door provides 31-3/8" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 22 |  | 136 | Bedroom door provides 31-3/8" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |

| | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| 23 | | 137 | Bedroom closet is 48-3/4" deep and door provides 31-3/8" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 24 | | 140 | Bathroom tub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub.  (Stock will be kept onsite and replenished as needed.) | Category A |
| 25 | | 141 | In the galley-style kitchen, clearance between the range and the sink is 34-1/2". | Provide shallower appliance equivalent to existing refrigerator upon request of resident with a disability. | Category C |
| 26 | | 142 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 27 | | 143 | The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 29 | 3-11O - North (1 bed / 1 bath) (5O) | 184 | Pull side maneuvering space at bedroom door is 6-1/2" beyond latch. | Rehang door on opposite jamb and change swing direction to achieve maneuvering clearances required. | Category A |
| 30 | | 185 | Bathroom door provides 31-1/2" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |

| | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| 31 | | 187 | Bathtub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub. (Stock will be kept onsite and replenished as needed.) | Category A |
| 32 | | 188 | In U-shaped kitchen, clearance between range and refrigerator is 58-3/4". | Provide shallower appliance equivalent to the existing appliance to be replaced upon request of resident with a disability. | Category C |
| 33 | | 189 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 34 | | 190 | The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 36 | 12B - North (2 bed / 2 bath) | 199 | Terrace door exterior threshold is 2-1/4" high. | Applied ramp on request. | Category C |
| 37 | | 200 | Guest bedroom door provides 31-1/4" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 38 | | 201 | Master bathroom door provides 31-1/4" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 39 | | 202 | Master bedroom closet is 43-1/4" deep and door provides 31-1/4" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 40 | | 203 | Master bathroom door provides 31-1/4" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |

| | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| 41 | | 205 | Master (shower) bathroom toilet paper dispenser is 9-3/4" in front of the water closet (at centerline of dispenser) and 35" from the rear wall of the water closet. | Relocate toilet paper dispenser to 7"-9" in front of the water closet (measured to centerline of dispenser), on request in this Type A bathroom. | Category C |
| 43 | | 208 | Hall bathroom tub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub.  (Stock will be kept onsite and replenished as needed.) | Category A |
| 45 | | 210 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 46 | | 211 | The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on | Category B |
| 47 | 11-12D - North (2 bed / 2 bath) (12D) | 213 | Terrace door interior threshold is1-1/4" high (3/4" vertical and 1/2" beveled). | Modify threshold on request. | Category C |
| 48 | | 214 | Terrace door exterior threshold is 2-1/4" high. | Applied threshold on request. | Category C |
| 49 | | 215 | Guest bedroom door provides 31-1/4" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 50 | | 216 | Hall bathroom door provides 31-3/8" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 51 | | 218 | Master bathroom door provides 31-3/8" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |

|  | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| 52 |  | 221 | Hall bathroom door pull side maneuvering space is 16" beyond latch. | Rehang door on opposite jamb and change swing direction to achieve maneuvering clearances required. | Category A |
| 53 |  | 223 | Hall bathroom tub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub. (Stock will be kept onsite and replenished as needed.) | Category A |
| 54 |  | 224 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category C |
| 55 |  | 225 | The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category C |
| **SOUTH TOWER UNITS** | | | | | |
| 56 | 3-11G - South (2 bed / 2 bath) (5G) | 144 | Thermostat in master bedroom is at 55" AFF. | Lower thermostat below 48" AFF, measured to the top of the operable controls. | Category A |
| 57 |  | 145 | Entry closet door is 59-3/4" deep and door provides 31-1/4" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 58 |  | 146 | Entry closet door pull side maneuvering space is 16-1/2" beyond latch. | Rehang door on opposite jamb and reverse swing direction. | Category A |

| | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| 59 | | 147 | Master bedroom door provides 31-1/4" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 60 | | 156 | Hall bathroom tub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub.  (Stock will be kept onsite and replenished as needed.) | Category A |
| 61 | | 157 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 62 | | 158 | The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 63 | 12A - South (2 bed / 2 bath) | 160 | Terrace door interior threshold is 1-1/4" high. | Modify threshold on request. | Category C |
| 64 | | 161 | Terrace door exterior threshold is 2-3/4" high. | Applied ramp on request. | Category C |
| 65 | 14A - South (1 bed / 1 bath) | 162 | Terrace door interior threshold is 1-1/2" high. | Modify threshold on request. | Category C |
| 66 | | 163 | Terrace door exterior threshold is 1-5/8" high. | Applied threshold on request. | Category C |
| 67 | 15A - South (2 bed / 2 bath) | 164 | Terrace door interior threshold is 1-1/2" high. | Modify threshold on request. | Category C |
| 68 | | 165 | Terrace door exterior threshold is 1-5/8" high. | Applied threshold on request. | Category C |
| 69 | 16B (PHB) - South (2 bed / 2 bath) | 167 | Terrace door interior threshold is 1" high. | Bevel threshold on request. | Category C |

| | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| 70 | | 168 | Terrace door exterior threshold is 2-1/8" high. | Applied threshold on request. | Category C |
| 71 | 3-11A - South (1 bed / 1 bath) (3A) | 105 | Entry closet door is 60-1/2" deep and door provides 31-1/4" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 72 | | 106 | Bedroom door provides 31-3/8" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 73 | | 107 | Bathroom door provides 31-3/8" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 75 | | 112 | Bathtub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub.  (Stock will be kept onsite and replenished as needed.) | Category A |
| 76 | | 113 | In galley style kitchen, clearance between range and sink is 34-3/4". | Provide shallower appliance equivalent to exisitng range upon requeest of resident with a disability. | Category C |
| 77 | | 115 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 78 | | 116 | The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |

| | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| 79 | 3-11H - South (1 bed / 1 bath) (3H) | 118 | Bedroom door provides 31-5/8" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 80 | | 119 | Bathroom door provides 31-3/8" clear opening width. | Remove existing hinges and replace with swing-clear hinges. | Category A |
| 81 | | 120 | Bathroom door interior threshold is 1" high (5/8" vertical and 3/8" beveled). | Replace transition strip with compliant rise / bevel. | Category A |
| 82 | | 123 | Bathtub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub. (Stock will be kept onsite and replenished as needed.) | Category A |
| 83 | | 124 | In galley style kitchen, clearance between range and sink is 35-1/2". | Provide shallower appliance equivalent to existing range upon request of resident with a disability. | Category C |
| 84 | | 125 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 85 | | 126 | The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |

| | Unit | Report No. | Condition | Retrofit | Notes |
|---|---|---|---|---|---|
| 87 | **3-11J - South (0 bed / 1 bath) (8J)** | 131 | Bathtub controls are not offset. | On request, install aftermarket device to offset controls toward the open side of the bathtub.  (Stock will be kept onsite and replenished as needed.) | Category A |
| 88 | | 132 | An accessible kitchen work surface is not provided. All kitchen work surfaces lack a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |
| 89 | | 133 | The kitchen sink lacks a clear floor space positioned for a forward approach due to a base cabinet. | Install compliant open knee and toe space or removable base cabinet that will provide compliant knee and toe space on turn. | Category B |

**END OF EXHIBIT**

## NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS
### 535 WEST 43RD STREET

To Our Residents and Prospective Residents:

**535 West 43rd Street** is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that the public and common use areas and apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that between now and [date seven months from Effective Date], we will be undertaking a program of retrofits to the public and common use areas to make them more accessible to persons with disabilities. A list of mandatory retrofits we will be undertaking is available at the leasing office. We do not anticipate any significant disruption to your use and enjoyment of the public and common use areas being modified.

Should you have questions regarding this letter, please contact the management office at _____.

Sincerely,

**535 West 43rd Street**

EXHIBIT "D"

**NOTICE OF RETROFITS TO CURRENT RESIDENTS OF 535 WEST 43RD STREET**

**535 West 43rd Street** is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that we offer modifications to apartments at **535 West 43rd Street** to provide greater accessibility for people with disabilities.  Some of these modifications must be performed in individual dwelling units over the next two and a half years from DATE.  Other modifications will require that you request the work be done in your unit, at no cost to you.  Some of those available only on request may require that you be dislocated from your unit for a period of more than fourteen hours.  In that event, we will, at our option, either provide you with alternative housing in an available furnished unit on site or pay you the applicable federal government per diem rate for food and lodging for the New York City area for each day or half-day you are dislocated.

Depending on your unit type and the particular features in your unit, the modifications to be performed by [Date 7 months from Effective Date] or available on your request may include:

- Widening of door openings and modifications (including ramps) to thresholds to ensure accessibility to and usability by persons using wheelchairs;

- Adaptation equipment for bathtubs to ensure accessibility and usability of the controls; or

- Replacement of kitchen appliances or modification of kitchen cabinets or other features to ensure usability by persons using wheelchairs.

Note that not all modifications are available for all unit types.   We are happy to discuss any individual accessibility needs with you at your convenience.

Other than those modifications that must be performed from the next two and a half years from DATE, if your unit type is one for which modifications are available, and you do not request any modification, some modifications may be made to your apartment after you have vacated it and before the unit is re-leased to a new occupant.

If you have any questions or would like to discuss what is available for your particular apartment type, please contact us at the management office at **_____ _____**.

Sincerely,

**535 West 43rd Street**

2

### NOTICE OF RETROFITS FOR NEW RESIDENTS OF 535 WEST 43RD STREET AVAILABLE ON REQUEST

**535 West 43rd Street** is dedicated to the principle of equal housing opportunity. Under the Fair Housing Act, we are pleased to offer certain features of physical accessibility for people with disabilities to our new residents on request.

If you request certain modifications, we will provide those modifications to your apartments at **535 West 43rd Street** to provide greater accessibility for people with disabilities.  The modifications will be made at no cost to you, and as soon as practicable, but within 45 days of your request.[1]  Some of the available modifications may require that you be temporarily dislocated from your apartment for fourteen (14) hours or more.  If you are already occupying your apartment when the modification work takes place, we will, at our option, either provide you with alternative housing in an available furnished unit on site or pay you the applicable federal government per diem rate for food and lodging for the New York City area for each day or half-day you are dislocated.

Depending on the particular features in your unit, the modifications to be performed or available on your request may include:

- Modifications (including ramps) to thresholds to ensure accessibility to and usability by persons using wheelchairs;

- Adaptation equipment for bathtubs to ensure accessibility and usability of the controls; or

- Replacement of kitchen appliances or modification of kitchen cabinets or other features to ensure usability by persons using wheelchairs.

If you have any questions or would like to request an accessibility modification, please contact us at the management office at _____.

Sincerely,

**535 West 43rd Street**

---

[1] If your apartment home is occupied at the time you sign a lease and make a request for accessibility modification, the modification will be made within forty-five days of the date the apartment is vacated by the prior resident.

## ANTI-DISCRIMINATION POLICY (HOUSING)

As part of our continuing effort to ensure compliance with federal, state, and local anti-discrimination fair housing laws, we would like to take this opportunity to remind all employees of this company and all persons associated with it of our policies regarding discrimination. It is important for everyone to keep in mind **535 West 43rd Street** commitment to fair and equal housing opportunity.

Fair housing laws cover most housing in this country and prohibit discrimination in residential real estate transactions (such as rental or sale of dwellings, single-family or multifamily) and real estate-related transactions (such as financing and appraisals).  While the principles of fair housing apply to housing that is both "for sale" and "for rent," these principles are expressed below in terms of your employment with **535 West 43rd Street**, which concerns rental housing only.

In furtherance of our commitment to compliance with federal, state, and local fair housing laws, any employee conduct described below is strictly prohibited, and engaging in such conduct is grounds for disciplinary action, up to and including termination of employment:

- Refusing to show, rent, or negotiate for the rental of, or otherwise make unavailable or deny, housing to any person because of their race, color, religion, creed, sex, familial status (having or expecting a child under 18), national origin, disability, weight, height, marital or partnership status, age, sexual orientation, gender identity, military or veteran status, citizenship or immigration status, lawful source of income, or being a victim of domestic violence (each a "*protected characteristic*[1]");

- Discriminating against any person in the terms, conditions or privileges of a rental or in the provision of services or facilities in connection with a rental because of a protected characteristic as identified above otherwise protected by law;

- Making any oral or written statement with respect to the rental of housing that indicates any preference, limitation or discrimination concerning a prohibited characteristic, or any statement indicating an intention to make any such preference, limitation or discrimination;

- Representing to any person because of a protected characteristic that any dwelling is not available for inspection or rental when such dwelling is in fact so available; and

- Directing or steering any individual toward a particular building, neighborhood or

---

[1] Additional protected characteristics may be covered by state or local fair housing laws, depending on the specific location of your community.  You are responsible for fair housing compliance under any such law.

vacancy because of a protected characteristic.

- Refusing to provide reasonable accommodations for potential renters with disabilities.

- Harassing, coercing, intimidating, threatening, or interfering with any person because of their protected characteristic.

**EXHIBIT "G"**

## NON-PROFIT ORGANIZATIONS TO BE NOTIFIED
## OF AVAILABLE HOUSING

1.  Brooklyn Center for the Disabled (BCID)
    25 Elm Place, 5th fl.
    Brooklyn, NY 11201

2.   NYC-Westchester/ OPWDD-SANYS
    25 Beaver St., 4th fl.
    New York, NY 10004

3.  Heights and Hills
    81 Willoughby St., Ste 302,
    Brooklyn, NY 11201

4.  Center for Independence of the Disabled in New York, Queens (CIDNY)
    1010 Avenue of Americas, ste 301
    New York, Ny 10018

5.  Queens Center for Progress
    81-15 164th St
    Jamaica, NY 11432

6.  Bronx Independent Living Services (BILS)
    2330 Hoffman Street C-1A
    Bronx, NY 10458

7.  Independent Living Association
    110 York St
    Brooklyn, NY 11201

8.  Harlem Independent Living Center
    289 Nicholas Ave, Ste 21
    New York, NY 10027

9.  Include NYC
    520 8th Ave., 25th fl. Ste 2503
    New York, NY 10018

10. Inter-Agency Council of Developmental Disabilities Agencies, Inc.
    150 West 30th St., 15 fl.
    New York, NY 10001

11. NYC Spinal
    P.O. Box 286444, Yorkville Station
    New York, NY 10128-0014

<span style="color:red">**EXHIBIT "H"**</span>

## <u>NOTICE TO NON-PROFIT ORGANIZATIONS</u>

**[INSERT LETTERHEAD]**

**535 West 43rd Street** has recently completed a number of modifications to the common areas and individual units of our multi-dwelling residential building in New York City. **535 West 43rd Street** is located in New York, New York, and contains approximately 270 apartments, which are a mix of studio, one-bedroom, and two-bedroom units.  More information about **535 West 43rd Street** can be found at:  [**website**].

In addition, prospective residents may contact the management office to find out about other "on request" modifications that may be available to increase the physical accessibility of a particular apartment.

We hope this information is helpful to your organization.

Sincerely yours,

**EXHIBIT "I"**

Fair Housing Logo – NOT TO SCALE



**EXHIBIT "J"**

Fair Housing Poster – NOT ACTUAL SIZE

U. S. Department of Housing and Urban Development





EQUAL HOUSING
OPPORTUNITY

**We Do Business in Accordance With the Federal Fair Housing Law**

(The Fair Housing Amendments Act of 1988)

---

**It is illegal to Discriminate Against Any Person Because of Race, Color, Religion, Sex, Handicap, Familial Status, or National Origin**

---

■ In the sale or rental of housing or residential lots

■ In the provision of real estate brokerage services

■ In advertising the sale or rental of housing

■ In the appraisal of housing

■ In the financing of housing

■ Blockbusting is also illegal

---

Anyone who feels he or she has been discriminated against may file a complaint of housing discrimination:

    1-800-669-9777 (Toll Free)
    1-800-927-9275 (TTY)
    www.hud.gov/fairhousing

**U.S. Department of Housing and Urban Development**
**Assistant Secretary for Fair Housing and Equal Opportunity**
**Washington, D.C. 20410**

Previous editions are obsolete      form HUD-928.1 (6/2011)